UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SARA LIGHTHALL on behalf of the Child Known
as E.A.S.,

                        Plaintiff,

v.                                               5:24-CV-0283
                                              (GTS/TWD)

OSWEGO CITY SCHOOL DISTRICT; THE
BOARD OF EDUCATION OF THE OSWEGO
CITY SCHOOL DISTRICT; DR. MATHIS
CALVIN III, Superintendent of the Oswego City
School District in his Official Capacity and Individually;
AMANDA CALDWELL, Assistant Superintendent of
the Oswego City School District in her Official Capacity
and Individually; RYAN LANIGAN, Principal of the
Oswego High School in his Official Capacity and
Individually; and KIRK MULVERHILL, Assistant
Principal for the Oswego High School in his Official
Capacity and Individually,

                        Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

SMITH PARRY P.L.L.C.                      JARROD W. SMITH, ESQ.
  Counsel for Plaintiff
11 South Main Street
P.O. Box 173
Jordan, NY 13080-0173

FERRERA FIORENZA P.C.                 CHARLES C. SPAGNOLI, ESQ.
  Counsel for Defendants
5010 Campuswood Drive
East Syracuse, NY 13057

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this declaratory judgment action filed by Sara Lighthall on behalf of the child known as E.A.S. ("Plaintiff") against the Oswego City School District ("District"), the Board of Education of the Oswego City School District ("Board of Education"), Superintendent Dr. Mathis Calvin III, Assistant Superintendent Amanda Caldwell, Principal Ryan Lanigan, and Assistant Principal Kirk Mulverhill (collectively "Defendants"), is Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 4.) For the reasons set forth below, Defendants' motion is denied, but this matter is remanded to state court for lack of subject-matter jurisdiction.

I.     RELEVANT BACKGROUND

   A.     Plaintiff's Complaint[1]

Generally, in her Complaint, Plaintiff asserts fourteen enumerated claims against Defendants related to bullying and other conduct that E.A.S. endured at the hands of other students at Oswego High School and which caused him to suffer significant mental and emotional injuries: (1) negligence; (2) gross negligence; (3) negligent failure to identify E.A.S. as a student with a disability and to evaluate E.A.S. for an Individualized Education Plan ("IEP") pursuant to N.Y. Education L. §§ 4401(1) and 4402(1)(a); (4) negligent failure to identify and evaluate E.A.S. for an alternative Section 504 plan if he did not qualify for an IEP pursuant to N.Y. Education L. §§ 4401(1) and 4402(1)(a); (5) negligent failure to act *in loco parentis* to E.A.S.; (6) negligently allowing bullying, intimidation, and harassment against E.A.S.; (7)

---

[1]     Plaintiff's Complaint was originally filed in Oswego County Supreme Court and was removed to this Court on February 26, 2024. (Dkt. No. 1.)

2

negligent and/or grossly negligent failure to enforce and follow the Dignity for All Students Act ("DASA"); (8) negligent failure to prevent a hostile school environment; (9) intentional infliction of emotional distress ("IIED"); (10) negligent infliction of emotional distress ("NIED"); (11) aggravation of E.A.S.'s pre-existing mental health conditions; (12) vicarious liability of Defendants District and Board of Education under the theory of *respondeat superior*; (13) negligent hiring, screening, retention, supervision, and training against Defendants District and Board of Education; and (14) a violation of equal protection pursuant to the New York Constitution.  (Dkt. No. 1, Attach. 1.)

        **B.**        **Parties' Briefing on Defendants' Motion to Dismiss**

                **1.**        **Defendants' Memorandum of Law**

Generally, in their motion to dismiss, Defendants make nine arguments.  (Dkt. No. 4, Attach. 2.)  First, Defendants argue that Plaintiff's claim related to an alleged failure to provide E.A.S. with an IEP should be dismissed because Plaintiff has failed to exhaust her administrative remedies under the Individuals with Disabilities Education Act ("IDEA").  (*Id.* at 4-7.)[2] Specifically, Defendants argue that, although Plaintiff has pled this claim as arising under state law, it should be construed as inherently arising under federal law according to the artful-pleading doctrine, and thus the IDEA's exhaustion requirements apply to that claim.  (*Id.*)  They further argue that, in the alternative, any IDEA claims against the individual Defendants must be dismissed because there is no right to sue individuals pursuant to that statute.  (*Id.* at 6.)

---

[2]     Page citations in this Decision and Order refer to the screen numbers on the Court's Case Management / Electronic Case Filing ("CM/ECF") System, not to the page numbers stated on the documents contained therein.

Second, Defendants argue that Plaintiff's claim related to an alleged failure to provide a Section 504 plan to E.A.S. should be dismissed based both on (a) her failure to allege acts facts plausibly showing causation between the absence of a Section 504 plan and the alleged bullying (and resulting emotional damage), and (b) the unavailability of damages for emotional distress under Section 504 of the Rehabilitation Act.  (*Id.* at 7-8.)   They further argue that any claims based on Section 504 against the individual Defendants must be dismissed because there is no right to sue individuals pursuant to that statute.  (*Id.* at 8.)

Third, Defendants argue that Plaintiff's claims brought under various negligence theories should be dismissed as duplicative of her general negligence claim.  (*Id.* at 8-9.)

Fourth, Defendants argue that Plaintiff's claim pursuant to DASA must be dismissed because that statute does not provide any private right of action.  (*Id.* at 9.)

Fifth, Defendants argue that Plaintiff's claim for IIED must be dismissed because the allegations do not describe conduct that can be found to be extreme and outrageous as a matter of law, and, as to Defendants District and School Board, public policy prevents the bringing of an IIED claim against government entities.  (*Id.* at 9-10.)

Sixth, Defendants argue that Plaintiff's claims for aggravation of a mental health condition and *respondeat superior* liability must be dismissed because New York law does not create any such independent causes of action.  (*Id.* at 10-11.)

Seventh, Defendants argue that Plaintiff's claim related to an alleged violation of the New York's Equal Protection Clause must be dismissed because (a) alternative federal remedies exist in the form of a claim under 42 U.S.C. § 1983 related to the federal Equal Protection

4

Clause, and (b) there is also an adequate state remedy in the form of an Article 78 proceeding that precludes a state constitutional claim. (*Id.* at 11-12.)

Eighth, Defendants argue that Plaintiff's official capacity claims against the individual defendants also must be dismissed as redundant because she has named the District and the School Board as defendants in this case. (*Id.* at 12.)

Ninth, Defendants argue that the Court should decline to exercise supplemental jurisdiction over any of Plaintiff's remaining state law claims if it finds that the claims based in federal law must be dismissed. (*Id.* at 13.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff makes two arguments. (Dkt. No. 16, Attach. 2.) First, Plaintiff argues that, rather than being dismissed for failure to state a claim, this case should be remanded back to the Oswego County Supreme Court because she has not asserted any federal law claim and her third and fourth claims are not preempted by federal law in any manner that would necessitate construing those claims as arising under federal law or conferring the Court with subject-matter jurisdiction. (*Id.* at 4-6.) She further argues that, even if her third claim was construed as arising under the IDEA, this Court would not have jurisdiction over such claim because that statute requires exhaustion of certain administrative procedures before federal jurisdiction can lie. (*Id.* at 5-6.)

Second, Plaintiff argues that none of her causes of action are preempted by any federal statute such that this Court could construe her state-law claims as federal-law claims. (*Id.* at 6-10.) Specifically, Plaintiff argues that, although the relevant claims might require a consideration of elements of federal law in the course of assessing her independent state-law

negligence claim (such as whether an IEP was required under the IDEA), that fact does not mandate removal because the Second Circuit has held that removal under the artful-pleading doctrine is permitted only where there is a federal statute that (a) explicitly provides for removal, or (b) completely preempts a state-law claim; and only a few statutes (not including the IDEA or the Rehabilitation Act) have since been found to have such complete preclusive effect. (*Id.*) She reiterates that construing her state-law claims as arising under the IDEA or Rehabilitation Act would not permit jurisdiction because the IDEA requires exhaustion of certain administrative procedures before the court may assume jurisdiction over such claims. (*Id.*)

### 3. Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants make three arguments. (Dkt. No. 17.) First, Defendants argue that Plaintiff's request to remand this case focuses on her claim related to the IDEA, but ignores the fact that jurisdiction can still be found over her claim related to Section 504 of the Rehabilitation Act. (*Id.* at 3-7.) Specifically, Defendants argue that the provisions of the New York Education Law on which Plaintiff purports to base her fourth claim does not implicate or mandate the provision of a Section 504 plan and therefore does not act as an independent basis of state law for that claim. (*Id.* at 6-7.)

Second, Defendants argue that, should the Court find that it has subject-matter jurisdiction over Plaintiff's Complaint, it should deem Defendants' motion to dismiss to be unopposed because Plaintiff has not provided any arguments in its response memorandum that directly address the various arguments raised by Defendants beyond the jurisdictional issue. (*Id.* at 7-8.)

6

Third, Defendants argue that Plaintiff's admission that she has not exhausted her administrative remedies under the IDEA moots the question of whether her IEP claim arises under the IDEA. (Id. at 8, 11-12.) In any event, she further argues that it is difficult to conclude that her IEP claim does not arise under the IDEA given the following facts: (a) her assertion of entitlement to attorney's fees indicates an intent to proceed under the IDEA because none of her other claims permit recovery of attorney's fees; (b) her allegations related to this claim do not suggest an intent to plead an ordinary state-law negligence claim, because she has asserted at least seven other claims sounding in ordinary negligence (rendering redundant a negligence claim based on a failure to provide an IEP); and (c) Plaintiff is mistaken as a matter of law that complete preemption is the only circumstance under which the artful-pleading doctrine can be applied to construe a claim as being based in federal law. (*Id.* at 8-12.)

## II.   GOVERNING LEGAL STANDARDS

For the sake of brevity, the Court will not recite the well-known legal standard governing Defendants' motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), but will recite the legal standard governing a dismissal for lack of subject-matter jurisdiction.

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). "A lack of subject matter jurisdiction cannot be waived, and may be raised by motion or *sua sponte* at any time." *Spartan Bus. Solutions LLC v. Marquis Cattel Co. Inc.*, 23-CV-6728,

2024 WL 861005, at *4 (W.D.N.Y. Feb. 29, 2024) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 107 [2d Cir. 1997]; Fed. R. Civ. P. 12[h][3]).

In a case involving a removal from a state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The party asserting the existence of jurisdiction or seeking to sustain the removal bears the burden of showing that removal was proper. *Arnold v. Navient Solutions, LLC*, 17-CV-1277, 2018 WL 6671542, at *2 (N.D.N.Y. Dec. 19, 2018) (Scullin, J.) (citing *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 [2d Cir. 2006]).

### III. ANALYSIS

After careful consideration of whether the Court has subject-matter jurisdiction over Plaintiff's claims, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. *See, supra,* Part I.B.2 of this Decision and Order. To those reasons, the Court adds the following analysis.

Because the Court cannot render any findings related to Plaintiff's various claims unless it has subject-matter jurisdiction over them, it must first determine whether there is a basis to construe any of Plaintiff's state-law claims as asserting a sufficiently federal interest to place this matter within the ambit of the Court's jurisdiction.[3]

Although Defendants do not seek to dismiss Plaintiff's Complaint based on a lack of subject-matter jurisdiction, Plaintiff has raised this argument in her opposition memorandum of

---

[3]    As the parties appear to agree, there is no diversity jurisdiction in this case, and thus the only basis for jurisdiction is the existence of a federal question.

law.[4] Specifically, Plaintiff argues that this case should be remanded to the Oswego County Supreme Court due to lack of subject-matter jurisdiction because (a) the parties are all residents of New York State and thus complete diversity does not exist, and (b) she has not asserted any federal claims in her Complaint and the Court cannot (or at least should not) construe any of the state-law claims she has raised as sufficiently implicating federal law to create jurisdiction. (Dkt. No. 16, Attach. 2.)

"As a general rule, a suit seeking recovery under state law is not transformed into a suit 'arising under' federal law merely because, to resolve it, the court may need to interpret federal law." *Sullivan v. American Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 115 [1936]). However, under the artful-pleading doctrine, "a plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law." *Sullivan*, 424 F.3d at 271 (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475-76 [1998]). In such a case, "the federal court may construe the complaint as if it raised the federal claim that actually underlies the plaintiff's suit." *Sullivan*, 424 F.3d at 272 (citing *Rivet*, 522 U.S. at 475).

Although *Sullivan* indicated that the artful-pleading doctrine "includes within it the doctrine of complete preemption" (and its analysis was indeed based on complete preemption), it acknowledged that the scope of the doctrine was not clear at that time. *Sullivan,* 424 F.3d at 272 n.4 (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 55-56 [2d Cir. 1998]). However, the Second

---

[4] As pointed out by Defendants, Plaintiff's opposition memorandum of law does not actually respond to any of Defendants' failure-to-state-a-claim arguments, but is styled as a "Memorandum of Law in Support of Remanding this Case to State Supreme Court." (Dkt. No. 16, Attach. 2.)

Circuit has since resolved this lack of clarity, stating affirmatively that the artful-pleading doctrine encompasses *only* two situations: (1) where Congress has "so completely preempted, or entirely substituted, a federal law cause of action for a state one that plaintiff cannot avoid removal by declining to plead 'necessary federal questions'"; and (2) where Congress has "expressly provided for the removal of particular actions asserting state[]law claims in state court."  *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 133 (2d Cir. 2023) (quoting *Romano v. Kazacos*, 609 F.3d 512, 519 [2d Cir. 2010]).  The Second Circuit specifically rejected an argument in *State by Tong* that the artful-pleading doctrine allows a court to simply "look beyond the plaintiff's characterization of its claims and determine whether the real nature of the complaint is federal, even if the plaintiff is attempting to avoid federal jurisdiction by framing its claims in terms of state law."  *State by Tong*, 83 F.4th at 133-34 (internal quotation marks omitted).

   Defendants do not argue that Plaintiff's education-based claims meet either of the above two criteria.  (*See generally* Dkt. No. 4, Attach. 2; Dkt. No. 17.)  As to the first criterion, Defendants argue that, contrary to Plaintiff's argument, complete preemption is not the only way in which the artful-pleading doctrine can be met, but that rather "[t]he most obvious, and most commonly-encountered [situation], is where a plaintiff's claim is, on its face, for violation of a federal law, and the plaintiff attempts to use state-law terminology as window dressing to avoid federal jurisdiction."  (Dkt. No. 17, at 10-11.)  However, while they are correct that complete preemption is not the only way to meet the artful-pleading doctrine, Defendants cite no authority to support their "window dressing" theory.  Again, the Second Circuit has made clear that the only situations in which a court may find the artful-pleading doctrine supersedes the well-

10

pleaded complaint rule are where there is complete preemption or where Congress has expressly provided for removal.

Defendants expressly argue that they are not relying on any type of preemption in their motion, much less the rare complete preemption required here. (Dkt. No. 17, at 10.) Moreover, they do not argue (or cite authority for the point of law) that Congress expressly provided for removal of state-law claims that fall somewhere within the scope of the IDEA or the Rehabilitation Act. (*See generally* Dkt. No. 4, Attach. 2; Dkt. No. 17.) Thus, pursuant to Second Circuit law, Defendants have not shown that the artful-pleading doctrine is applicable here.

The Second Circuit does, however, recognize a third situation (beyond the application of the artful-pleading doctrine) in which a court may find that a complaint implicates a federal law claim despite not pleading as such: where "'the vindication of a state[-]law right necessarily turns on a question of federal law.'" *State by Tong*, 83 F.4th at 133 (quoting *Fracasse v. People's United Bank*, 747 F.3d 141, 144 [2d Cir. 2014]). This exception, recognized by the Supreme Court in *Gunn v. Minton*, 568 U.S. 251 (2013), is characterized as an "extremely rare exception" where "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

The "necessary" element requires that the Court look to the elements of the state-law claim asserted to determine whether the Court would need to apply federal law to resolve such cause of action. *See Gunn*, 568 U.S. at 259 (finding the court would be required to apply federal patent law when determining whether the plaintiff could prove a claim of legal malpractice

11

related to conduct in a patent action under Texas law); *State by Tong*, 83 F.4th at 140 (noting that "[a] 'state-law claim necessarily raises federal questions where the claim is affirmatively premised on a violation of federal law'") (quoting *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 [2d Cir. 2016]).  The "actually disputed" element requires an assessment of whether the federal question involved in resolution of the state law claim is disputed by the parties.  *Gunn*, 568 U.S. at 259.  The "substantial" element looks not to whether the federal question is relevant or significant to the claim or the parties, but to "the importance of the issue to the federal system as a whole."  *Id.* at 260-63 (finding federal patent law issues were not substantial in a legal malpractice case because the resolution of the issue would not have any impact on the result of the prior federal patent litigation or any future litigation and would not undermine the goal of a uniform body of federal patent law).  Lastly, the "balance" element involves an assessment of the "appropriate 'balance of federal and state judicial responsibilities'" by looking at, for example, the interests of the federal and state courts in the issue presented.  *Id.* at 264.

  As to the first element of this analysis, the Court must assess whether it would be required to apply federal law in order to resolve Plaintiff's claims of negligence related to a failure to identify and evaluate E.A.S. for an IEP or a Section 504 plan.  Under New York law, a negligence claim can be established by showing "a duty owed to the plaintiff by the defendant, a breach of that duty, and injury proximately resulting therefrom."  *Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150, 157 (N.Y. 2023).  In her Complaint, Plaintiff alleges that Defendant Board of Education had a duty pursuant to N.Y. Edu. L. § 4402(1)(a) to, in relevant part, "identify, locate and evaluate in accordance with this section all students with disabilities in

12

such district who are in need of special education" and "maintain a register containing the name of each child with a disability who resides in the district, the nature of such child's disability, the educational placement and setting, if any, of such child, and any other student-specific data required to comply with federal law or regulations." (Dkt. No. 1, Attach. 1, at ¶¶ 48, 56.) She further alleges that Defendant Board of Education negligently breached this duty by failing to identify, locate, and evaluate E.A.S. for an IEP and/or Section 504 plan despite being aware of his mental health conditions.[5] (*Id.* at ¶¶ 49, 57.)

Although Defendants are correct that both of the relevant causes of action assert generally that the failure to identify and evaluate E.A.S. for an IEP and/or Section 504 plan represents a negligent failure to provide E.A.S. with a free and appropriate public education (and resulted in physical, psychological, and emotional injury), the invocation of a right to a free and appropriate public education does not automatically mean that the Court would be required to

---

[5]     Defendants' argument that N.Y. Educ. L. § 4402(1)(a) does not permit any claim related to the failure to identify or evaluate E.A.S. for provision of a Section 504 plan because that statute refers only to the provision of an IEP is facially incorrect. The relevant subsection of the statute is not limited to the provision of IEPs, but instead requires the identification, location, and evaluation of students "who are in need of special education." N.Y. Educ. L. § 4402(1)(A). Notably, "special education" is defined as including enumerated special services and transportation, some of which arguably might be provided through a Section 504 plan. Although later portions of this section discuss developing an "individualized education program," it is far from explicit that the duty to identify, locate, and evaluate a student in need for special education is limited only to evaluation for an IEP and could not include instead an alternative Section 504 plan if such is warranted. In any event, as will be discussed in more detail below, whether Plaintiff's state law claims are viable under an interpretation of New York law is not at issue until the Court reaches the threshold determination of whether subject-matter jurisdiction exists, and the mere fact a state-law claim may not be viable is not sufficient to construe that claim as being sufficiently grounded in federal law to confer such jurisdiction.

assess federal law in order to resolve Plaintiff's asserted negligence claims.[6] Further, the fact that there is federal law related to the provision of IEPs, including various procedural safeguards for the evaluation of students for IEPs, is not a basis for finding that Plaintiff's claims must be construed as federal given that the duty alleged here arises under state law.

Notably, Plaintiff does not assert that Defendant Board of Education violated any portion of the IDEA or Rehabilitation Act, but rather that it failed to identify, locate, and evaluate E.A.S. for an IEP or Section 504 plan as required by N.Y. Educ. L.§ 4402(1)(a). As pleaded, Plaintiff's claims therefore do not require an assessment or application of federal law to resolve whether a duty was owed under New York law or that a breach of such duty occurred because the duty relied upon is grounded in state law. Indeed, this state law requires a board of education to identify, locate, and evaluate children with disabilities who are in need of "special education." N.Y. Educ. L.§ 4402(1)(a). The fact that the specific special education devices Plaintiff alleges E.A.S. should have been evaluated for (and which would provide for the relevant services) arise under federal law does not automatically make Plaintiff's claims into ones brought pursuant to

---

[6] Defendants' citation to *Fry v. Napolean Community Schs.*, 580 U.S. 154 (2017), is inapplicable to the issue here. That case involved an assessment of whether the IDEA exhaustion requirement should be applied to disability-related claims brought pursuant to other federal statutes (such as the Rehabilitation Act or Title II), relying in part on an assessment of whether those claims were for a denial of a free appropriate public education. *Fry*, 580 U.S. at 167-68. However, there is no indication that the Supreme Court intended this analysis to apply to an assessment of the circumstances in which a court should construe a state law claim as actually arising under federal law for the purposes of subject-matter jurisdiction. Simply stated, to the extent that *Fry* might be relevant, that relevance would be confined to the context of assessing whether the IDEA's exhaustion requirements should be applied to Plaintiff's state-law claims; it would not extend to the context of assessing whether those state-law claims must be construed as being based in federal law for the purposes of conferring jurisdiction.

the IDEA or the Rehabilitation Act.[7]  As written, Plaintiff's Complaint simply would not require a court to consider whether Defendant Board of Education's action violated any procedures under the IDEA and/or Section 504, only whether they failed to comply with the duty apparently outlined in N.Y. Educ. L.§ 4402(1)(a).  Further, the injury alleged is not the denial of a free and appropriate education itself, but rather "physical, psychological, and emotional injury, [and] costs and expenses."  (Dkt. No. 1, Attach. 1, at ¶¶ 50-51.)

Moreover, the fact that Plaintiff perhaps could have asserted a federal claim under the IDEA and/or the Rehabilitation Act (assuming she had exhausted her relevant administrative remedies first) does not require her to do so, and does not serve as a reason for construing her claims as inherently federal where (a) she has plausibly alleged an independent basis for asserting such claims under state law and (b) there is no reason to believe that such state laws are completely preempted by federal law or would require removal per an explicit statement of Congress.[8]  *See Bay Shore Union Free Sch. Dist. V. Kain*, 485 F.3d 730, 734 (2d Cir. 2007)

---

[7]    Federal law requires that an IEP be created to formalize what specific services or programs a disabled student is entitled to following evaluation.  20 U.S.C. § 1414(d).  However, the fact that a school might be required to craft an IEP or Section 504 plan when providing special education services does not transform claims for a violation of the New York Education Law related to the identification or evaluation for such services into a violation of the IDEA or Rehabilitation Act.

[8]    Such a finding does not, as Defendants appear to argue, allow Plaintiff to escape the exhaustion requirements of the IDEA while still maintaining what is essentially an IDEA claim.  It is indisputable that Plaintiff will be locked in by her characterization of the relevant claims as arising under a state-law negligence theory when such claims are assessed by the state court, which requires a different standard than an IDEA or Rehabilitation Act claim.  Moreover, as Defendants acknowledge, requested remedies such as an award of attorney's fees will not be available to Plaintiff if her claims are construed as arising under state law rather than under the IDEA, which means that, by choosing to pursue a state law claim rather than a federal claim, Plaintiff has forfeited her ability to seek attorney's fees (regardless of the fact that she included a boilerplate request for them in her Complaint).  Further, as was discussed above, it will be for the

(finding that, even if the IDEA "incorporates the relevant New York Education Law, this does not provide an independent federal question that would sustain the court's jurisdiction" where the issues in the suit in question do not actually turn on an interpretation of federal law); *Nelson v. City of Rochester, NY*, 492 F. Supp. 2d 282, 288 (W.D.N.Y. 2007) (recognizing a plaintiff's ability to generally control the forum in which their claims are adjudicated through their own pleading decisions, noting that "[i]f plaintiffs wanted to avoid the possibility of having to litigate their claims in federal court, they were free not to assert any federal claims in their complaint") (collecting cases); *cf. Marcus*, 138 F.3d at 52 ("Under the well-pleaded complaint rule, the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available."). Because Plaintiff's state-law claims as asserted do not require the application of federal law to be resolved, assuming subject-matter jurisdiction over them is not warranted.

Moreover, despite the fact that the federal government has an obvious interest in the uniform provision of a certain standard of special education to qualifying children with disabilities, it is undeniable that states are permitted to also legislate in that area so long as such legislation provides and complies with at least the minimum required by federal law. *See Zeichner v. Mamaroneck Union Free Sch. Dist.*, 881 N.Y.S.2d 883, 885-86 (N.Y. Sup. Ct., Westchester Cnty. 2009) (acknowledging that "[t]here exists both a Federal and State statutory scheme which generally require that all school age children receive appropriate public education to meet their specific learning needs," and analyzing the plaintiff's claims separately under both

---

state court to determine, if applicable, whether the IDEA's exhaustion requirements would nonetheless apply to Plaintiff's state-law claims under *Fry*.

the IDEA and applicable New York Education Law); *cf .Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 916 (2d Cir. 2024) (recognizing that the federal-state balance factor of the relevant test includes an assessment of whether the issue implicated is the sort of claim that is "ordinarily resolved in state courts").  As discussed above, Plaintiff's claims as pleaded involve not an assessment of federal law, but an assessment of whether Defendant Board of Education failed to meet its duty under New York law to identify E.A.S. as a student with a disability and to evaluate him for special education services.[9]  The federal system has little special interest in assessing matters that are, at their heart, based in questions of state law, even if they involve issues over which the federal government has also legislated.

While Defendants are correct that the purpose of the exceptions to the well-pleaded complaint rule are to prevent a plaintiff from inappropriately avoiding federal jurisdiction, such exceptions do not provide the Court with unfettered authority to conduct what the Second Circuit has characterized as a "free-wheeling inquiry" into the nature of the claims; instead, the assessment of whether claims are sufficiently based in federal law to confer subject-matter jurisdiction is limited to the circumstances delineated by the Supreme Court and the Second Circuit.  *State by Tong*, 83 F.4th at 133-34.  Because Defendants cannot show that Plaintiff's relevant claims here meet any of those exceptions, they have failed to show that Plaintiff's claims must be construed as federal despite the terms in which Plaintiff has pled them.

---

[9]     As to the question of whether N.Y. Educ. L. § 4402(1)(a) in particular creates any private right of action, such question would ultimately be for the state court to resolve, if relevant.  Even if Plaintiff's negligence claims based upon violations of N.Y. Educ. L. § 4402(1)(a) are not viable under state law, such fact would not merit construing them as having been asserted under the IDEA – it would merely merit their dismissal.  Again, Plaintiff has chosen to plead her claims as state-law claims and is bound to the consequences of that choice in the absence of any applicable reason to construe her claims as being inherently federal in nature.

Without a federal claim or interest in this action, the Court lacks subject-matter jurisdiction to consider the merits of Plaintiff's claims. The Court therefore denies Defendants' motion to dismiss for failure to state a claim, and finds that this matter should be remanded back to the Oswego County Supreme Court. *See* 28 U.S.C. § 1447(c) (providing that, in a case that has been removed from a state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 4) is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **REMANDED** to the Oswego County Supreme Court for all further proceedings in accordance with 28 U.S.C. § 1447(c).

Dated: September 19, 2024
       Syracuse, New York

_____
Glenn T. Suddaby
U.S. District Judge